## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DJENABA MCDOWELL,**

        **Plaintiff,**        **CIVIL ACTION NO. 12-cv-15175**

    **vs.**

                              **DISTRICT JUDGE GEORGE CARAM STEEH**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Djenaba McDowell seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 9) and Defendant's Motion for Summary Judgment (docket no. 12).   The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

## I.    RECOMMENDATION:

The Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be GRANTED IN PART and DENIED IN PART and that Defendant's Motion for Summary Judgment (docket no. 12) be DENIED.  The undersigned recommends remanding this matter so that the ALJ can provide her reasons for discounting Plaintiff's allegations related to the numbness in her hands;

her inability to sit, lay, or stand for extended periods of time; her inability to lift over five pounds; and her headaches.

## II.     PROCEDURAL HISTORY:

Plaintiff filed an application for Supplemental Security Income with a protective filing date of September 15, 2009, alleging that she had been disabled since January 1, 2003, due to a bad right shoulder, back pain, bipolar disorder, and anxiety.  (*See* TR 187-89, 203.)  The Social Security Administration denied benefits.  (*See* TR 25.)  Plaintiff requested a *de novo* hearing, which was held on July 20, 2011, before Administrative Law Judge (ALJ) Regina Sobrino, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 25-35.)  The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review.  The parties then filed their instant Motions.

## III.     PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.     Plaintiff's Testimony

Plaintiff was 38 years old at the time of the administrative hearing and 30 years old at the time of alleged onset.  (*See* TR 43.)  Plaintiff testified that she had a tenth-grade education and no high-school diploma.  (TR 43-44.)  At the time of the hearing, she lived with her mother and her uncle, and she had not worked since November 2, 2009, the day that she was involved in a car accident.  (TR 44.)  She added, however, that she had only been working for eight days at the time of her accident, and it had been "a few years before that" since she had previously worked.  (TR 44-45.)  Plaintiff told the ALJ that she was unable to work because of pain, weakness, and numbness throughout her body and an inability to concentrate.  (*See, generally*, TR 45-53.)

2

With regard to her physical ailments, Plaintiff testified that she had numbness in her hands due to carpal tunnel syndrome, which caused her problems with gripping.  (TR 45, 46-47.)  She also added that the numbness "goes up [her] arms."  (TR 45.)  She told the ALJ that she had trouble standing and walking and that while she did not know exactly how long she could stand before she would need to sit down, she would easily "get tired of . . . sitting, laying, [or] standing."  (TR 45.)  Plaintiff also testified that she had experienced knee pain ever since she "busted open" her knee during the November 2, 2009 car accident; she told the ALJ that she used a cane because her knee would "go in and out."  (TR 45.)

Plaintiff further testified that she had pain in her right shoulder that affected her neck and causes migraine headaches.  (TR 52.)  She told the ALJ that she had migraines before the car accident, but they had gotten worse since that time.  (TR 52.)  She noted that she could not lift over five pounds and that she had trouble reaching over her head, bending at the waist, crouching, and climbing steps.  (TR 46-47.)  She stated that she had pain throughout her body and that it "feel (sic) like a headache in [her] body."  (TR 47.)  She added that the pain caused her to sleep only three or four hours a night and that it was "not [a] straight three or four hours."(TR 51.)

Plaintiff told the ALJ that at the time of the hearing, she was not taking any medications.  (TR 49.)  She also indicated that she had never seen her primary physician, although she did have one, and that she walked out of her "accident doctor's" office "because [she] was in so much pain and [she] wasn't getting their understanding, and they wasn't (sic) getting [hers]."  (TR 49-50.)  Instead, Plaintiff treated primarily at the emergency room a Hurley Medical Center; she told the ALJ that she had visited the ER "constantly" since her accident due to the pain in her body.  (TR 50-51.)  Plaintiff also testified that while a physician had recommended surgery, she was "afraid to have that surgery done."  (TR 52.)

3

With regard to her mental impairments, Plaintiff testified that she had not treated with a mental health professional since her accident, and neither the ALJ nor her attorney questioned her about any prior treatment, with the exception of one question by the ALJ that led to an "inaudible" response. (*See* TR 51-53.) Plaintiff did indicate, however, that her pain interfered with her ability to concentrate and that her general energy level was "not good." (TR 52, 53.)

With regard to her daily activities, Plaintiff testified that she did not do any household chores and that while she did do some grocery shopping, she always took someone with her. (TR 48.) She told the ALJ that she did not visit any friends or relatives because they all had steps at their homes, and she could not climb them. (TR 48.) She further testified that her hobbies included singing, taking care of children, and cooking; that she had trouble bathing and dressing herself; and that she was able to drive, but she did not have a license. (TR 48.)

### B.    Medical Record

Defendant asserts that "[t]he ALJ provided a full discussion of the relevant evidence in this case" and does not set forth any statement of facts. (Docket no. 12 at 7.) Additionally, while Plaintiff sets forth a brief procedural history and discusses the ALJ's basis for denying her benefits, Plaintiff does not discuss her medical record. (Docket no. 9 at 5.) Therefore, the Court hereby incorporates by reference the medical record as set forth in the ALJ's opinion. (TR 30-33.) The Court has, however, conducted an independent review of Plaintiff's medical record and will incorporate comments and citations as necessary throughout this Report and Recommendation.

### C.    The Vocational Expert

The ALJ first asked the VE to consider a hypothetical person of Plaintiff's age, education, and vocational experience who was limited to performing light work, could not climb ladders or crawl, and could occasionally climb stairs, stoop, and crouch. (TR 54.) The ALJ added that the

hypothetical person was limited to no more than frequent handling, fingering, and feeling and that the person could not reach above shoulder level.  (TR 54.)  The ALJ further indicated that the hypothetical person could not be exposed to hazards or vibration and could not handle concentrated exposure to fumes, dust, or gases.  (TR 54.)  The ALJ also told the VE that the individual was limited to "simple, routine, and repetitive work consisting of one and two step tasks[; that t]he work should be low stress, there should be no fast-paced work, [and] no work that involves quotes and assembly line work[; and that t]he work should not involve more than brief, superficial contact with coworkers, supervisors, or the public."  (TR 54-55.)  The VE testified that such a person would be able to perform work as a food prep worker (5,800 jobs), an inspector (5,800 jobs), or a packer (9,200 jobs).  (TR 55.)

The ALJ then asked the VE to assume that a person with the same limitations was limited to sedentary work.  (TR 55.)  The VE testified that such a person could perform work as a sedentary inspector (600 jobs), a sedentary surveillance system monitor (400 jobs), a sedentary charge account clerk (800 jobs), or a credit clerk (300 jobs).  (TR 55-56.)  The ALJ then asked the VE to assume that such a person were also limited to "no more than occasional reaching on other directors" with her right arm.  (TR 56.)  The VE testified that such a person could only perform work as a surveillance system monitor or a credit clerk.  (TR 56.)

Finally, the ALJ asked the VE whether these jobs assumed that someone would be able to perform the work required in an eight-hour work day and how often someone could be absent from these jobs and still keep the job.  (TR 56-57.)  The VE testified that her testimony did assume that the individual could work an eight-hour work day and that, as a general rule, more than one absence per month would preclude employment.  (TR 56-57.)

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

5

The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 15, 2009, the date of her application, and that she had the following severe impairments: right shoulder/cervical/lumbar strain, borderline intellectual functioning, an affective disorder, and a history of substance addiction.  (TR 27.)  The ALJ further found that her impairments did not meet or equal those listed in the Listing of Impairments.  (TR 27-28.)  The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not credible and that Plaintiff had the ability to perform light work with the following additional limitations:

> [The claimant is limited to] no climbing of ladders; occasional climbing of stairs, stooping, and crouching; no crawling; no reaching above shoulder level; and no exposure to hazards or vibration.  The claimant is limited to performing simple, routine, repetitive work that does not involve more than 1- and 2-step tasks.  She is limited to low stress work (*i.e.*, no fast-paced work, no work that involves quotas, and no assembly line work) that does not involve more than brief and superficial interaction with co-workers, supervisors, and the public.

(TR 28-33.)  The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 34.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from September 15, 2009, through the date of the ALJ's decision.  (TR 34-35.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

6

*Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

*Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts

in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human*

*Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the

administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by

substantial evidence, it must be affirmed, even if the reviewing court would decide the matter

differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial

evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir.

1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can

go either way, without interference by the courts").

### B.      Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step

sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past
        work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work,

the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work

experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed

disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth

step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203

F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial

evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v.

Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence"

may be in the form of vocational expert testimony in response to a hypothetical question, "but only

'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"

*Id.* (citations omitted).

C.      **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in

conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a

sentence-four remand); and (2) a pre-judgment remand for consideration of new and material

evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six

remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing

42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the

pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of

the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where

there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a

sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at

*8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  Plaintiff argues that this matter should

be reversed or remanded because the ALJ (1) erred in assessing Plaintiff's credibility, (2) did not

8

accurately describe all of Plaintiff's limitations in the hypothetical questions posed to the VE,[1] and (3) did not afford proper weight to the medical opinions of record.  (*See* docket no. 9 at 6-15.)

### 1.      The ALJ's Assessment of Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997).  But Credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.*  "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not

---

[1]To the extent Plaintiff argues that the ALJ erred in the formulation of the hypothetical questions presented to the VE, the ALJ is only required to incorporate in her hypothetical those limitations that she finds credible and supported by the record.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Here, the ALJ presented all of the limitations in Plaintiff's RFC in her first hypothetical question to the VE, and the VE testified that there are jobs available for a person with these limitations. The ALJ's second and third hypotheticals imposed additional limitations that the ALJ did not ultimately include in Plaintiff's RFC.  Thus, in substance, Plaintiff's motion asserts that the ALJ's RFC is not supported by substantial evidence for the other reasons discussed.

reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff asserts that the ALJ's RFC (and, therefore, her hypothetical questions to the VE) failed to account for her complaints of numbness in her hands; her inability to sit, lay, or stand for extended periods of time; her inability to lift over five pounds; her trouble reaching over her head, bending, crouching, or climbing stairs; her trouble sleeping; her headaches; and her inability to concentrate. (*See* docket no. 9 at 10.) Plaintiff then generally asserts that the ALJ erred as a matter of law in her credibility assessment because "[Plaintiff's] testimony is backed up by the medical record." (Docket no. 9 at 10.) Defendant does not directly address Plaintiff's credibility argument and, instead, asserts that the ALJ's RFC determination is supported by the record.[2] (*See* docket no.

---

[2]Defendant does correctly note that a portion of Plaintiff's argument relies on evidence provided to the Appeals Council on November 22, 2011, almost three months after the ALJ issued her decision. (*See* docket no. 9 at 11 (citing TR 452, 455).) In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Secretary*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993). Further, under 20 C.F.R. § 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the

10

12.)

As an initial matter, there is no dispute that an ALJ is required to evaluate the claimant's entire record when formulating the plaintiff's RFC. *Webb v. Comm'r*, 368 F.3d 629, 633 (6th Cir. 2004) (citing 20 C.F.R. § 416.920(a)(4)(iv)). But there is no mandate that the ALJ discuss all of the evidence of record. To the contrary, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). Here, the ALJ set forth a particularly detailed review of Plaintiffs' medical record when formulating Plaintiff's RFC and assessing her credibility. (*See* TR 30-33.) While the ALJ may not have addressed every piece of evidence in her written decision, there is nothing to suggest that the ALJ did not consider the entire record.

With regard to Plaintiff's RFC, the ALJ limited Plaintiff to light work with no climbing of ladders; occasional climbing of stairs, stooping, and crouching; no crawling; no reaching above shoulder level; and no exposure to hazards or vibration. Thus, the ALJ accounted for Plaintiff's alleged trouble reaching over her head, bending, or crouching. The ALJ further limited Plaintiff to performing simple, routine, repetitive work that does not involve more than 1- and 2-step tasks and low-stress work that does not involve more than brief and superficial interaction with co-workers,

---

Secretary is supported by substantial evidence." *Wyatt*, 974 F.2d at 685 (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence on a showing of "good cause," 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001), but a plaintiff must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, (6th Cir. 1993). Plaintiff has not even attempted to meet this burden. Therefore, the undersigned has not considered this evidence herein.

supervisors, and the public.  Thus, the ALJ also accounted for Plaintiff's alleged concentration problems.  Therefore, Plaintiff's argument implies that the ALJ should have also limited her to sedentary work with a sit/stand option and no ability to grip with her hands and that the ALJ should have somehow accounted for Plaintiff's headaches.

Despite Plaintiff's overemphasis on the ALJ's failure to discuss every piece of evidence, a careful reading of the ALJ's decision shows that while the ALJ was meticulous in her review of the medical evidence, she failed to provide any explanation regarding why that evidence was insufficient to support Plaintiff's allegations.  After finding that Plaintiff's statements regarding her impairments were not credible, the ALJ discussed Plaintiff's mental impairments and the related record opinions.  (TR 30-31.)  The ALJ then dedicated 10 paragraphs over two full pages to discussing Plaintiff's physical impairments and another three paragraphs to the related medical opinions.  (TR 31-33.)  But with the exception of explaining why she afforded certain weight to the various medical opinions (as discussed, *infra*), the ALJ did not provide any substantive analysis related to Plaintiff's credibility; she merely set forth the evidence as a statement of fact.  Therefore, while the ALJ was sufficiently specific to make clear to Plaintiff and the Court the weight she gave to Plaintiff's statements, she failed to provide any reason for assigning that weight.  Consequently, the undersigned recommends remanding this matter so that the ALJ can provide her reasons for discounting Plaintiff's allegations related to the numbness in her hands; her inability to sit, lay, or stand for extended periods of time; her inability to lift over five pounds; and her headaches.[3]  Without such an analysis from the ALJ, the Court and Defendant would be forced to engage in a post-hoc rationalization to support the ALJ's decision.

---

[3]Notably, with the exception of the numbness in her hands, the ALJ did not even mention these allegations when discussing Plaintiff's testimony.  (*See* TR 29.)

12

## 2.    The ALJ's Assessment of the Medical Opinions of Record

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician.  *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008).  Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight."  *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).  The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant.   20 C.F.R. § 404.1527(c)(1).  The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist.  20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R. § 404.1527(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).  If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and

13

the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Additionally, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir.2008). There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

With regard to Plaintiff's mental impairments, the ALJ considered the opinions of Dr. Nikhil Vora, a consultative examiner, and Dr. Thomas Tsai, a state agency medical consultant, both of which the ALJ gave significant weight. (*See* TR 30-31.) The ALJ noted that Drs. Vora and Tsai's opinions were consistent with other evidence in the record, including Plaintiff's treatment history

14

and clinical findings report. (*See* TR 30-31.) With regard to Plaintiff's physical impairments, the ALJ discussed the opinion of Dr. Russell Holmes, a state agency medical consultant, which the ALJ gave some weight because it was consistent with Plaintiff's diagnostic test results and treatment history, but the ALJ noted that Dr. Holmes did not have the benefit of recent evidence. (TR 33.) The ALJ also considered the opinion of Dr. Awaisi, a physician who examined Plaintiff, and gave the opinion no weight because the opinion determined that Plaintiff was "disabled," and such a determination is reserved to the Commissioner. (TR 32); *see* SSR 96-5p and 20 C.F.R. 416.927(e). Moreover, the ALJ noted that Dr. Awaisi's opinion only applied to a one-month period from March 2011 to April 2011. (TR 32.) And finally, the ALJ considered the opinion of Brenda Myers, a physical therapist with whom Plaintiff treated for some time, but noted that the opinion was not consistent with the weight of the evidence and that Ms. Myers was not "an acceptable medical source" under SSR 06-3p. (TR 33.)

While Plaintiff dedicates a portion of her argument to explaining the treating physician rule and implying that the ALJ did not properly weight the medical opinions of record, Plaintiff does not develop her argument. (*See* docket no. 9 at 13-14.) Plaintiff does not explain what opinion the ALJ failed to consider or to which opinion the ALJ failed to assign proper weight. Moreover, Plaintiff's own testimony indicates that she did not have a treating physician; she treated primarily in the emergency room. (*See* TR 49-50.) Therefore, the Court recommends denying Plaintiff's motion with regard to this issue.

## VI.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 9) should be GRANTED IN PART and DENIED IN PART and Defendant's Motion for Summary Judgment (docket no. 12) should be DENIED. The undersigned recommends that this matter be

15

remanded so that the ALJ can provide her reasons for discounting Plaintiff's allegations related to the numbness in her hands; her inability to sit, lay, or stand for extended periods of time; her inability to lift over five pounds; and her headaches.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: December 9, 2013          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

16

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: December 9, 2013      s/ Lisa C. Bartlett
                                    Case Manager